STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason E. Goss, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2010AP1113–CR. Oral argument October 5, 2011.
—Decided December 23, 2011.*

2011 WI 104

(Also reported in 806 N.W.2d 918.)

72

For the defendant-appellant-petitioner there were briefs by *Dan Chapman* and *Chapman Law Office,* Hudson and oral argument by *Dan Chapman.*

For the plaintiff-respondent the cause was argued by *David H. Perlman,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1.   N. PATRICK CROOKS, J. This is a review of an unpublished decision of the court of appeals that affirmed the conviction of Jason Goss for fifth offense drunk driving.[1] The case arises from a traffic stop. Goss was stopped by a police officer for having a dirty license

---

[1] *State v. Goss,* No. 2010AP1113–CR, unpublished slip op. (Wis. Ct. App. Nov. 29, 2010).

plate and a broken license plate lamp. After pulling Goss over, the officer discovered that Goss had a revoked license and had four prior drunk driving convictions and was therefore subject to a .02 prohibited alcohol content (PAC) standard.[2] In the course of arresting Goss for the license offense, the officer noticed the odor of alcohol and asked Goss to provide a breath sample for a preliminary breath test (PBT), a request that under statute may be made only where there is probable cause to believe the driver is operating a vehicle in violation of one of the statutes related to drunk driving.

¶ 2. We are asked to determine whether the officer's request for the PBT breath sample was made in violation of Wis. Stat. § 343.303, which states that an officer "may request" a PBT breath sample "[i]f a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63," which prohibits driving or operating a motor vehicle with a prohibited alcohol concentration. We agree with Goss that the legislature's intent was to require probable cause for a request for a PBT breath sample for all non-commercial drivers, including those who are subject to a reduced prohibited alcohol content standard. This case presents a question we have not previously addressed: whether probable cause exists to request a PBT breath sample when the driver is known to be

<hr/>

[2] Wis. Stat. § 340.01 (46m)(c) (2007–08) defines "Prohibited alcohol concentration" as "an alcohol concentration of more than 0.02" for persons who have three or more "prior convictions, suspensions or revocations as counted under s. 343.307(1)." There is no dispute that Goss was subject to the .02 PAC standard under Wis. Stat. § 340.01 (46m)(c). All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

subject to a .02 PAC standard, the officer knows it would take very little alcohol for the driver to exceed that limit, and the officer smells alcohol on the driver. We now hold that under these circumstances, there is probable cause to request a PBT breath sample. The PBT breath sample in this case was requested on the basis of probable cause as the statute requires, and we therefore affirm the court of appeals.

## I. BACKGROUND

¶ 3.   On October 12, 2008, Goss was pulled over by an Eau Claire Police Department officer for an obstructed license plate violation. Goss admitted to the officer that his driver's license was currently revoked, which the officer confirmed by contacting headquarters. The officer was also informed that Goss had four prior drunk driving convictions. The officer then placed Goss under arrest for operating with a revoked license. As the officer placed Goss in the squad car, the officer noticed the smell of alcohol.[3]

¶ 4.   The officer then asked Goss to provide a breath sample for a PBT, and Goss complied.[4] The PBT indicated a 0.084% blood alcohol content. Following the

---

[3] Questioning occurred before Goss was given his *Miranda* warnings and Goss's statements were later suppressed by the circuit court. The suppression of these statements was not appealed by the State and is not at issue here. Goss's suppressed statements are not considered in our analysis.

[4] The State at oral argument suggested that the court adopt a rule for those refusing to provide a PBT breath sample that is analogous to the rule the court of appeals set forth in *State v. Babbitt*, 188 Wis. 2d 349, 362, 525 N.W.2d 102 (Ct. App. 1994) (holding that "admission of [a driver's] refusal to perform a field sobriety test as evidence of probable cause to arrest did not violate her fifth amendment rights"). Goss did not refuse to

PBT, the officer asked Goss to perform field sobriety tests and then took him to a local hospital, where a sample of his blood was taken pursuant to Wis. Stat. § 343.305(2).[5] Chemical analysis of the blood sample revealed a blood alcohol concentration of 0.080%. Goss was subsequently charged with fifth offense drunk driving in violation of Wis. Stat. § 346.63(1)(b).

¶ 5.  In pretrial motions before the circuit court for Eau Claire County, the Hon. Lisa K. Stark presiding, Goss asked that the results of the PBT be suppressed on the grounds that probable cause did not exist under these circumstances for the officer to request it.[6] Goss argued that the only basis for the officer's request was

provide a breath sample, and we have no reason to address that question on the facts of this case.

[5] Wis. Stat. § 343.305(2) provides:

Implied consent. Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol . . . when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b) . Any such tests shall be administered upon the request of a law enforcement officer. . . .

[6] The consequence of suppressing the blood test would generally be the suppression of all subsequently obtained evidence.

[I]n its broadest sense, the [fruit of the poisonous tree doctrine] can be regarded . . . as a device to prohibit the use of any secondary evidence which is the product of or which owes its discovery to illegal government activity.'

Although the fruit of the poisonous tree sprouted from the Fourth Amendment . . . [the] doctrine has been applied to the Fifth and Sixth Amendments as well as statutory violations.

*State v. Knapp,* 2005 WI 127, ¶¶ 24–25, 285 Wis. 2d 86, 700 N.W.2d 899 (internal citations omitted).

the odor of alcohol; he argued that such a basis is insufficient because this court had stated in *County of Jefferson v. Renz* that the probable cause required by the PBT statute for a non-commercial driver was intended to mean "more proof than 'any presence' of an intoxicant."[7]

¶ 6.    The circuit court found that probable cause existed to request a breath sample from Goss under these circumstances. The circuit court stated,

> The question is then: Based upon the fact that the officer knew this gentleman's license was revoked, he had four prior OWI offenses and he smelled like intoxicants and the officer clearly knew that the blood alcohol content permissible is .02, is that enough to request a preliminary breath test and field sobriety tests?
>
> . . . .
>
> . . . I'm going to find that it is.

¶ 7.    The court went on to distinguish the probable cause needed to request a PBT breath sample from the probable cause needed for arrest on the PAC violation:

> I think that is not probable cause for arrest, but it was sufficient basis to continue to conduct additional testing, and it's different from just smelling alcohol on someone with no prior violations or a different applicable statute because you've got the four prior violations that the officer knew about, and I think that makes a difference.

¶ 8.    The court of appeals affirmed on the same grounds, holding that probable cause existed to request the PBT breath sample. *State v. Goss,* No.

---

[7] *Cnty. of Jefferson v. Renz,* 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999).

2010AP1113–CR, unpublished slip op. (Wis. Ct. App. Nov. 29, 2010). It stated in denying Goss's motion for reconsideration, "[W]e agree with the circuit court that the odor of intoxicants, in conjunction with knowledge that Goss had four prior OWI convictions, provided probable cause to believe that Goss was in violation of the OWI laws." *State v. Goss,* No. 2010AP1113–CR, unpublished order (Wis. Ct. App. Jan. 7, 2011). This court granted Goss's petition for review.

## II. APPLICABLE LAW

¶ 9. This case requires us to construe a statute, which is a matter of law that we review de novo. *Cnty. of Jefferson v. Renz,* 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999). It also requires that we make a determination about whether probable cause existed in the particular circumstances presented here. "We uphold the trial court's findings of fact unless they are clearly erroneous." *Id.* at 316. "Whether those facts satisfy the statutory standard of probable cause is a question of law we review de novo." *Id.* In determining whether probable cause existed, we look to the totality of the circumstances. *State v. Babbitt,* 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994).

¶ 10. When we construe a statute, we apply the following principles to our analysis.

> [S]tatutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Statutory language is given its common, ordinary, and accepted meaning . . . .
>
> Context is important to meaning. So, too, is the structure of the statute in which the operative language

79

appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.

*State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110 (internal citations omitted).

¶ 11.  Wisconsin Stat. § 343.303, the statute we are concerned with here, states in relevant part, "If a law enforcement officer *has probable cause to believe that the person is violating or has violated s. 346.63* [which prohibits driving or operating a motor vehicle with a prohibited alcohol concentration] . . . the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test . . . ." (emphasis added).

¶ 12.  For commercial drivers,[8] the statute eliminates the requirement of probable cause and permits a PBT request "if the officer *detects any presence of alcohol* . . . on a person driving . . . a commercial motor vehicle *or has reason to believe that the person is violating* or has violated s. 346.63(7) or a local ordinance in conformity therewith . . . ." Wis. Stat. § 343.303 (emphasis added). These two alternatives for commercial drivers are commonly referred to as the "any presence" standard and the "reason to believe"

[8] The stricter drunk driving provisions for commercial drivers were first created in 1989 by Wisconsin Act 105, which reduced the PAC for such drivers to 0.04% and created other penalties. *See An Historical Summary of Wisconsin's Drunk Driving Legislation* Legislative Reference Bureau Informational Memorandum 09–1, LRB-09–IM-1 (Jan. 2009).

standard to distinguish these standards from the probable cause standard required for non-commercial drivers. *See Renz,* 231 Wis. 2d 293. If either the "any presence" or the "reason to believe" standard is satisfied, the officer may request a PBT breath sample from a commercial driver. Wis. Stat. § 343.303.

¶ 13.  We examined this statute in *Renz* in the context of a challenge to a request by an officer for a PBT breath sample from a non-commercial driver who was suspected of having violated the county OWI ordinance and was subject to what was that time a .10 prohibited alcohol content standard.[9] *Renz,* 231 Wis. 2d at 299. In *Renz,* we determined that this statute was ambiguous because it was "subject to . . . conflicting, reasonable interpretations," *id.* at 305, concerning the meaning of the words "probable cause to believe" and what quantum of evidence satisfied the requirement of probable cause prior to a breath sample request. We determined that a reasonable person could conclude that "probable cause to believe" means "probable cause for arrest" on the grounds that "case law commonly defines probable cause for an arrest as proof that would lead a reasonable police officer to believe that a person probably committed a crime." *Id.* at 302. We determined that it was also reasonable to conclude, given the context of the surrounding language, that "probable cause to believe" was intended to mean "something less than probable cause for arrest." *Id.* at 302–03.

¶ 14.  We therefore turned to the "context, history, and purpose of the statute in order to determine the legislative intent." *Id.* at 305. The stated purpose of the

[9] The Jefferson County ordinances Renz had been charged with violating had adopted Wis. Stat. § 346.63(1)(a) and (b) (1993–94).

statute,[10] the removal of the penalty for refusal of a request for a breath sample for a PBT,[11] the words

[10] *Renz* quoted the following statement of purpose:

The legislature intends by passage of this act:

1. To provide maximum safety for all users of the highways of this state.

2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated.

3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated.

4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated.

5. To promote driver improvement, through appropriate treatment or education or both, of persons who operate motor vehicles while intoxicated.

*Renz*, 231 Wis. 2d at 315 (quoting § 2051(13)(b), ch. 20, Laws of 1981).

[11] "The fact that the legislature removed the penalty for refusing to take a PBT is further evidence that the legislature intended the PBT to be a preliminary, investigative test." *Renz*, 231 Wis. 2d at 314. This court made a similar observation in *State v. Fischer*, 2010 WI 6, ¶ 32, 322 Wis. 2d 265, 778 N.W.2d 629. There we stated, "In the evidentiary gap between reasonable suspicion and probable cause for arrest, a voluntarily taken PBT can furnish the necessary evidence to remove an impaired driver from the road." *Id.*, ¶ 32. Justice Annette Kingsland Ziegler, in her concurrence in *Fischer*, joined the majority but wrote to emphasize the lack of reliability of PBT results: "I conclude that as a matter of law PBT results are neither reliable nor admissible for the purpose of confirming or dispelling a defendant's specified alcohol concentration in an OWI or PAC trial." *Id.*, ¶ 37 (Ziegler, J., concurring). In granting a "conditional writ" of habeas corpus to Fischer after our decision, a United States magistrate judge ordered that the conviction be set aside "unless the state initiates proceedings to retry and commences the retrial of Fischer." *Fischer v. Ozaukee Cnty. Circuit Court*, 741 F. Supp. 2d 944, 958–59 (E.D. Wis. Jan. 7, 2011). Online court records indicate that a retrial is currently scheduled for March 20, 2012.

chosen to describe the test,[12] and the absurd results produced by reading the statute to require probable cause for arrest before a breath sample test[13] convinced us that the legislature intended for a PBT to function as a preliminary screening tool to be used prior to an arrest and thus intended to permit police to request a PBT breath sample with something less than probable cause for arrest.[14]

¶ 15. The legislature enacted Wis. Stat. § 340.01(46m)(c) in 2000, after *Renz* was decided, es-

---

[12] "The legislature entitled Wis. Stat. § 343.303 'Preliminary breath screening test,' and the text of the statute also describes the test as a 'preliminary breath screening test.' . . . [W]hen it described the test as 'preliminary,' the legislature clearly indicated that it intended the test to be a preparation for something else. It seems obvious that that something else—the main matter—is the arrest itself." *Renz,* 231 Wis. 2d at 313.

[13] Thus, under the defendant's interpretation, an officer could . . . request a PBT [only] after already having established probable cause for an arrest, even though the statute explicitly provides that the officer may use the PBT result in determining whether to make an arrest. Furthermore, before presenting evidence of the PBT result to rebut a challenge to probable cause for an OWI arrest, the petitioner would have to prove that probable cause to arrest existed before the PBT was administered, even though the statute clearly states that the PBT result will be admissible "to show probable cause for an arrest, if the arrest is challenged."

Basic principles of statutory construction disfavor an interpretation of the first sentence that yields such unreasonable results.

*Renz,* 231 Wis. 2d at 306–07 (internal citations omitted).

[14] There is a large body of law setting forth probable cause standards at various stages of criminal proceedings. For an analysis and overview, *see Renz,* 231 Wis. 2d at 317–27 (Abrahamson, C.J., concurring). This case does not produce any new standard but rather applies the established PBT breath sample request standard to a set of facts not previously addressed.

83

tablishing a PAC of .02 for drivers with three or more prior OWI convictions. 1999 Wis. Act 109. The legislature has since enacted legislation that makes the .02 PAC standard under Wis. Stat. § 340.01(46m)(c) applicable to people subject to an ignition interlock order. *See* 2009 Wis. Act 100.

## III. ANALYSIS

¶ 16. As the parties agree, this court has not specifically applied the probable cause standard from Wis. Stat. § 343.303 as interpreted in *Renz* in a PAC case involving a subject limited to a .02 PAC standard. We now turn to the application of this standard to the facts of this case. "We uphold the trial court's findings of fact unless they are clearly erroneous." *Renz*, 231 Wis. 2d at 316. "Whether those facts satisfy the statutory standard of probable cause is a question of law we review de novo." *Id.*

¶ 17. In this case the officer knew before he requested the PBT breath sample that Goss had four prior OWI convictions and was therefore subject to a very low PAC standard. The officer testified at the motion hearing that, as he placed Goss in the back of the squad car, he "smelled an odor of intoxicants coming from his person." And he testified that he took into consideration the knowledge that even a small amount of alcohol could put a suspect over a .02 PAC standard: "[I]f I smell any odor of intoxicant, I guess there's more suspicion that he's going to be over that .02 . . . ."

¶ 18. The facts as found by the circuit court and not disputed on appeal are as follows:

> Based upon all of the—the totality of the circumstances and the information in the officer's knowledge, the

Defendant . . . smelled of alcohol, which [the officer] learned after he'd arrested the Defendant [on the operating after revocation charge] and placed him in the squad car, and he knew that he had four prior arrests for operating while intoxicated.[15]

The circuit court also referenced the low PAC standard applicable to Goss and the fact that a person consuming even a small amount of alcohol would exceed that limit: "[W]ith four prior OWIs, a revoked license and smelling like alcohol when you're buckling someone in, it would be reasonable, I think, for the officer to check and to believe that he had consumed alcohol and to question whether or not. I mean, basically, it's a drink or a drink and a half."

¶ 19.  While there is no dispute as to the facts, the parties characterize the application of the law under these circumstances differently. Goss argues that the officer in this case asked for a breath sample for the PBT solely on the basis of the smell of alcohol and that he therefore did so without the statutorily required probable cause. He argues that under the statute, only a commercial driver can be asked by an officer to provide a PBT breath sample without a showing of probable cause when "the officer detects any presence of alcohol . . . on [the] person driving . . . ." Wis. Stat. § 343.303. He reasons that because the legislature created the two levels of proof required—the "any presence of alcohol" standard and the "probable cause to believe standard"—that probable cause has to mean

---

[15] The question of whether the officer also knew Goss was on probation was also discussed in the motion hearing, but as the State acknowledges, "[T]he trial court opined that the state had not met its burden of proof as to this issue, and thus dismissed it from its analysis." Resp. Br. at 6 n.1.

something more than "detect[ing] any presence of alcohol." *See id.* His position, as explained in his briefs and at oral argument, is based on three points: first, that the requirement of probable cause under *Renz* applies to all non-commercial drivers, even those subject to a lower PAC standard; second, that Goss's prior convictions have no probative value and are irrelevant to a probable cause determination; and finally, that there was nothing but the odor of alcohol in this instance to support the request for the breath sample for the PBT.

¶ 20. The State agrees that probable cause is required to request a PBT breath sample, but it argues that probable cause existed here and was supported by the facts that Goss smelled of intoxicants and that the officer knew Goss had four prior OWI convictions and would therefore be subject to the .02 PAC standard. The State asserts that the standard of probable cause established in *Renz* is therefore satisfied here. It argues that *Renz* was not intended to create a bright line rule and that there are significant differences between the facts of *Renz* and the facts of this case. *Renz* involved an investigation of an OWI violation, not a PAC violation, and the defendant in *Renz* was subject to a PAC five times the PAC level Goss was subject to.[16] Instead, it argues that *Renz* stands for the proposition that a breath sample may be requested for a PBT with less evidence than that required to establish probable cause for arrest; it argues that the evidence necessary to establish probable cause to arrest is less for one crime than for another, and the amount of evidence that constitutes probable cause to request a PBT also

---

[16] The ordinance applicable to Renz adopted a statute that established the PAC standard at .10. *See* Wis. Stat. 340.01(46m)(a) (1993–94); *Renz,* 231 Wis. 2d at 299 n.3.

changes accordingly.[17] The State also contends that as a practical matter, requiring more facts than odor and the knowledge that the driver is subject to a lower PAC standard would render the PBT statute meaningless and unusable for PAC cases.[18] In such cases, a driver who is in violation is still unlikely to display any other perceptible signs of having consumed alcohol.

¶ 21.  Our task is to determine whether probable cause existed to request a PBT breath sample from a non-commercial driver on the facts presented. Goss asks us to approach the job of determining whether probable cause is established on this set of facts by essentially placing him not in one of the categories of

---

[17] As the State argues in its brief, "There is nothing in the [*Renz*] opinion to suggest that this middle standard is not flexible as to its requirements, depending on the type of offense involved. Goss is selling *Renz* short, arguing in effect that it . . . set[s] up a rigid test that must be met even if laws change." Resp. Br. at 7–8.

[18] Wis. Stat. § 346.63(1)(a), the OWI statute, prohibits any person from driving or operating a motor vehicle while "[u]nder the influence of an intoxicant . . . to a degree which renders him or her incapable of safely driving." The PAC statute, § 346.63(1)(b), in contrast, prohibits any person from driving or operating a motor vehicle while "[t]he person has a prohibited alcohol concentration." The PAC standard that applies to drivers with two or fewer prior OWI convictions is .08, Wis. Stat. § 340.01(46m)(a); the PAC standard that applies to Goss under Wis. Stat. § 340.01(46m)(c) is .02; and a person who has not attained the legal drinking age may not drive with an alcohol concentration of "more than 0.0," Wis. Stat. § 346.63(2m). (The statute concerning drivers who have not attained the legal drinking age makes no specific reference to a requirement of probable cause but depending on the circumstances, case law may require such a determination. *See State v. Woods,* 117 Wis. 2d 701, 710, 345 N.W.2d 457 (1984) (applying standards for probable cause to arrest an adult in a case involving a juvenile).)

commercial and non-commercial drivers established in the statute, but instead within a third category of drivers—those non-commercial drivers subject to the .02 PAC standard. Goss argues that only then should we turn to the task of gathering other remaining facts besides the applicable lower PAC standard that would support probable cause to request a PBT breath sample. His approach, in other words, would remove the applicable PAC standard from the list of facts to be considered in the totality of the circumstances for a determination of probable cause. He supports this approach with the assertion that the prior convictions have no probative value and therefore are not relevant to a determination of probable cause. His argument seems to be that to uphold the request for a PBT breath sample in this case would in effect, for all drivers in the category of non-commercial drivers subject to the .02 PAC, erase the requirement of probable cause and substitute instead the "any presence of alcohol" standard that the statute applies only to commercial drivers.

¶ 22. One flaw in his argument is the proposition that prior convictions have no probative value and are irrelevant in a probable cause analysis. That is inconsistent with our reasoning in *State v. Lange,* in which we listed several factors in support of probable cause,[19] one of which was the following:

---

[19] *State v. Lange,* 2009 WI 49, 317 Wis. 2d 383, 766 N.W.2d 551, addressed the question of whether there was probable cause to arrest, rather than the question we address here, which is whether there was probable cause to request a PBT breath sample; we cite it here because it illustrates that regardless of the quantum of evidence needed to satisfy a given standard, a prior conviction may be taken into consideration.

[B]y the time of the arrest, Officer Hoffman had discovered that the defendant had a prior conviction for operating a motor vehicle while under the influence of an intoxicant. *Officer Hoffman could take this evidence into account when determining whether she had probable cause to believe that the defendant was under the influence of an intoxicant while operating his vehicle.*

*State v. Lange,* 2009 WI 49, ¶ 33, 317 Wis. 2d 383, 766 N.W.2d 551 (emphasis added).

¶ 23. Another flaw in Goss's approach is that he cites no basis in the statute or case law that would lead us to formulate the question presented as he essentially does ("For drivers subject to a .02 PAC, is the odor of alcohol alone sufficient to establish probable cause, notwithstanding our holding in *Renz* to the contrary?"). Rather, the question should be: "For any non-commercial driver, does probable cause exist to request a PBT breath sample when the facts known to the officer include an odor of alcohol and the knowledge that the driver is subject to a .02 PAC that takes very little consumed alcohol to exceed?" The statute creates two categories of drivers, and Goss falls into the category of the first, non-commercial drivers. There is no basis for implicitly establishing a third category.

¶ 24. We see no reason to exclude those facts given our holding in *Lange,* which recognizes the appropriateness of considering prior convictions in a probable cause determination, and given the high relevance of prior convictions in this case because the statute drastically changes the PAC applicable to the suspect, from .08 to .02. The circuit court found that such facts were known to the officer at the time when he determined that probable cause existed to request a PBT breath sample.

¶ 25. We next address whether, given those facts, probable cause existed to request the breath sample for the PBT. We have often stated the principle that probable cause is a determination made "looking at the totality of the circumstances" and is a "flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *Lange,* 317 Wis. 2d 383, ¶ 20. The applicable standard of probable cause established in *Renz* to request a breath sample was "a quantum of proof that is greater than the reasonable suspicion necessary to justify an investigative stop, and greater than the 'reason to believe' necessary to request a PBT from a commercial driver, but less than the level of proof required to establish probable cause for arrest." *Renz,* 231 Wis. 2d at 317. Given these governing principles and the facts found by the circuit court and not challenged on appeal, we conclude that probable cause existed under the circumstances of this case to request a breath sample for a PBT. These facts are enough to provide the quantum of proof this court determined was required in *Renz.*

██ ██

¶ 26. In this case, both the smell of alcohol on Goss and the officer's knowledge that Goss could drink only a very small amount before exceeding the legal limit that applied to him make the conclusion that Goss was likely in violation of the statute highly plausible. This holding is fully consistent with our holding in *Renz* concerning the amount of proof required to request a PBT from a non-commercial driver such as Goss. *Renz* said the legislature intended to require for such drivers "a quantum of proof that is greater" for probable cause than what is required to request a PBT breath sample from a commercial driver. *Id.* That standard has been met here. We reiterate what we stated in *Renz:* that the

90

legislature provided the PBT as a screening tool for officers investigating impaired drivers.
*Id.* at 310.

¶ 27.   To hold otherwise would hamstring the ability of law enforcement to investigate a suspected violation of the .02 PAC statute. The ordinary investigative tools employed in an investigation of an OWI case with a .08 PAC standard are of little or no use where the PAC standard is one fourth of that level because the ordinary physical indications of intoxication are not typically present in a person with that level of blood alcohol content. The legislature has signaled its intention to make the .02 PAC statute applicable to more drivers, and it is essential that law enforcement have the PBT screening tool provided by the legislature at its disposal in investigating suspected PAC violations such as the one here.

## IV.   CONCLUSION

¶ 28.   This case presents a question we have not previously addressed: whether probable cause exists to request a PBT breath sample when the driver is known to be subject to a .02 PAC standard, the officer knows it would take very little alcohol for the driver to exceed that limit, and the officer smells alcohol on the driver. We now hold that under these circumstances, there is probable cause sufficient to request a breath sample. The PBT breath sample in this case was requested on the basis of probable cause as the statute requires, and we therefore affirm the court of appeals.

*By the Court.*—Affirmed.