**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 12, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP200-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017CF30

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JEFFREY I. QUITKO,

   DEFENDANT-APPELLANT

APPEAL from a judgment of the circuit court for Kewaunee County:  DAVID L. WEBER, Judge.  *Reversed and cause remanded*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    SEIDL, J.  Jeffrey Quitko appeals a judgment, entered upon his no-contest plea, convicting him of eighth-offense operating a motor vehicle with a prohibited alcohol concentration (PAC).  Quitko contends the circuit court erred in denying his motion to suppress evidence obtained following his traffic stop for a

speeding violation because law enforcement: (1) unreasonably expanded the scope of the initial stop in order to conduct a PAC investigation without having reasonable suspicion to do so; and (2) lacked probable cause to request that Quitko submit to a preliminary breath test (PBT).

¶2    We agree with Quitko's latter argument.[1]  In *State v. Goss*, 2011 WI 104, ¶2, 338 Wis. 2d 72, 806 N.W.2d 918, our supreme court held, under facts largely similar to those present in this case, that a law enforcement officer has probable cause to request that a driver submit to a PBT when three conditions are met: (1) the driver is known to be subject to a .02 PAC standard; (2) the officer knows the driver would need to consume very little alcohol to exceed that limit; and (3) and the officer smells alcohol on the driver.  Because we conclude the State failed to meet its burden to establish that the second condition was satisfied in this case, we reverse the judgment of conviction and remand with directions that the circuit court grant Quitko's suppression motion.

## BACKGROUND

¶3    A criminal complaint charged Quitko with eighth-offense PAC and eighth-offense operating a motor vehicle while intoxicated (OWI).  Quitko filed a suppression motion, challenging the lawfulness of the extension of his traffic stop and the use of the evidence subsequently obtained.  The circuit court held a

---

[1] Because we agree with Quitko that law enforcement lacked probable cause to request that he submit to a PBT, we do not address his argument that law enforcement unreasonably expanded the scope of the initial traffic stop.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

hearing on Quitko's motion, at which Kewaunee County sheriff's deputy Jordan Salentine was the sole witness.

¶4      Salentine began his testimony by stating he had become a sheriff's deputy in 2014 and had been performing patrol duties since February 2016.  When asked how many OWI-related arrests he had made, he estimated that a "dozen would probably be on the lower end."  Regarding his training for the investigation of such crimes, he explained he had taken "courses in relation to standardized field sobriety tests" while obtaining his associate's degree in police science.  He had also participated in various continuing education "refreshers" since beginning his employment with the sheriff's department.

¶5      Salentine then testified that on February 13, 2017, at approximately 5:05 p.m., he observed a vehicle traveling seventy-eight miles-per-hour in a sixty-five miles-per-hour speed zone.  After stopping the vehicle, Salentine made contact with its driver and sole occupant, whom he identified as Quitko.

¶6      During this initial contact, Salentine collected Quitko's driver's license and proof of insurance.  Salentine then returned to his patrol car and entered Quitko's personal information into his "computer system and notified [his] dispatch of the traffic stop."  As a result, Salentine learned that "Quitko had seven prior OWI convictions and [therefore] was not allowed to operate [with] over a .02" blood alcohol concentration (BAC).  *See* WIS. STAT. § 340.01(46m)(c) (2017-18).[2]

_____

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

3

¶7     Salentine then began preparing a written warning to Quitko for his speeding violation. As he did so, however, he "observed" that he had forgotten to ask Quitko for one of the items which appeared on the "warning form"—namely, Quitko's phone number. Accordingly, Salentine approached Quitko's vehicle a second time to obtain that information.

¶8     During this second contact, Salentine "observed a slight odor of an intoxicating beverage or intoxicants emitting from the vehicle." Salentine explained later in his testimony that such an odor could be a factor in determining whether a person has consumed alcohol. Salentine acknowledged, however, that he had no training or experience that would allow him to infer a person's specific BAC based upon the odor of an intoxicant alone. It is undisputed that Salentine also failed to provide any testimony indicating he had any training or experience concerning the amount of alcohol a person could consume before exceeding a .02 BAC.

¶9     After smelling the "slight odor" of an intoxicating beverage emitting from Quitko's vehicle, Salentine asked Quitko if he had been drinking. Quitko denied having done so, but Salentine "did not believe him." Salentine explained that he did not believe Quitko's denial because "there would be no other reason I would be smelling the odor of an intoxicating beverage coming from the vehicle."[3] Salentine therefore returned to his patrol car a second time and notified dispatch that he was now "investigating a possibly operating while intoxicated."

_____

[3] Salentine did acknowledge on cross-examination, however, that he was not certain whether the odor of alcohol was coming from Quitko himself or from garbage inside of Quitko's vehicle.

4

¶10     Salentine began his new investigation by asking Quitko if he was willing to submit to a PBT to "check" if it was true that he had not been drinking. Quitko informed Salentine that he was not interested in doing so, but he agreed to perform field sobriety tests (FSTs). Quitko successfully completed the FSTs without showing any signs of impairment. Following the FSTs, Salentine again requested that Quitko submit to a PBT. Quitko then agreed to do so, and the PBT yielded a result of .112. Salentine therefore placed Quitko under arrest.

¶11     After briefing, the circuit court orally denied Quitko's suppression motion. The court determined that although the FSTs did not yield "any additional probable cause or anything else," Salentine had probable cause to request that Quitko submit to a PBT once he smelled the slight odor of intoxicating beverages emitting from Quitko's vehicle. The court explained:

> [U]nder *Goss* … I believe the speeding,[4] the smell of alcohol, the knowledge of the reduced blood alcohol level because of the prior convictions, all converged in this case in a way very similar to *Goss*, or at least [in] this Court's opinion sufficiently similar to *Goss* as to establish probable cause to give the PBT.

The court rejected Quitko's attempt to distinguish *Goss* on the basis that Salentine had not testified that he had any knowledge that it took only a small amount of alcohol consumption for a person to reach a .02 BAC. The court reasoned, "I think it's common sense…. It doesn't take a lot of alcohol to go over .02."

---

[4] We observe that the State does not argue on appeal that speeding, uncoupled with any other act of poor or suspicious driving, provides any basis to request that an individual submit to a PBT. Consequently, we will not further discuss the undisputed fact that Quitko was speeding when Salentine initiated the traffic stop.

¶12 Quitko subsequently pleaded no contest to eighth-offense PAC, and the circuit court imposed a sentence consisting of four years' initial confinement and four years' extended supervision. Quitko now appeals, challenging the denial of his suppression motion. *See* WIS. STAT. § 971.31(10).

## STANDARD OF REVIEW

¶13 When reviewing a circuit court's denial of a motion to suppress evidence, we will uphold the court's findings of fact unless those findings are clearly erroneous. *Goss*, 338 Wis. 2d 72, ¶9. Whether the facts fulfill the statutory standard to request a PBT, however, is a question of law we review de novo. *Id.*

## DISCUSSION

¶14 As a threshold matter, we address a theme that runs throughout the arguments in the State's response brief. Specifically, relying on deputy Salentine's testimony that Quitko initially informed Salentine he was not interested in submitting to a PBT, the State casts this as a refusal case. But the State not only failed to argue below that Quitko refused a valid PBT request, it argued at the conclusion of the suppression hearing that the circumstances surrounding Quitko's so-called refusal were a "red herring."

¶15 Presumably as a result of the State's "red herring" argument, the circuit court never even considered in its decision—much less found—whether Quitko's statement that he was not "interested" in initially submitting to a PBT constituted a refusal. Thus, by suggesting that this case involved a refusal, the State is essentially asking us to decide—based on a record that is undeveloped due to the State's own actions—an issue that was not considered by the circuit court.

6

Even though we recognize that a respondent may generally "employ any theory or argument on appeal that will allow us to affirm the trial court's order, even if not raised previously," *Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶42, 274 Wis. 2d 719, 685 N.W.2d 154, we decline to consider the State's newly raised refusal argument under these circumstances.

¶16    We now turn to Quitko's argument that Salentine did not have probable cause to request that he submit to a PBT, and that the circuit court therefore erred by denying his suppression motion. For the reasons that follow, we agree with Quitko.

¶17    WISCONSIN STAT. § 343.303 provides that an officer "may request" that an individual submit to a PBT "[i]f a law enforcement officer has probable cause to believe that the person is violating or has violated [WIS. STAT. §] 346.63." In this context,

> "[P]robable cause to believe" refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, and greater than the "reason to believe" that is necessary to request a PBT from a commercial driver, but less than the level of proof required to establish probable cause for arrest.

*County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (citing WIS. STAT. § 343.303).

¶18    In *Goss*, our supreme court considered whether this standard was met when an officer smelled the odor of alcohol on a driver subject to a .02 PAC standard. *Goss*, 338 Wis. 2d 72, ¶1. As indicated, the court held that it was met, so long as: (1) the investigating officer knows the driver is subject to the .02 PAC standard; (2) the officer knows the driver would need to consume very little

7

alcohol to exceed that limit; and (3) and the officer smells alcohol on the driver. *Id.*, ¶2.

¶19     As set forth above, Salentine testified to having taken "courses in relation to standardized field sobriety tests," receiving periodic "refreshers," and conducting upwards of twelve OWI-related arrests.  But, as the State tacitly acknowledges, nothing about this testimony concerned Salentine's knowledge of, or experience with, how much alcohol an individual may consume before exceeding a .02 PAC standard.  Because the *Goss* court held that such knowledge is necessary to satisfy the probable cause standard set forth in WIS. STAT. § 343.303, we conclude that the standard was not met in this case.

¶20     A further distinction between this case and *Goss* is that here, unlike the officer in *Goss*, Salentine did not testify that he smelled the odor of alcohol coming from Quitko's person.  *See Goss*, 338 Wis. 2d 72, ¶17.  Rather, Salentine testified that he smelled the odor coming from the car, but he was unable to tell whether it was coming from garbage in the car or from Quitko himself.

¶21     To be sure, "an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause."  *State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125.  But, in the specific context concerning probable cause and the odor of a controlled substance, our supreme court has counseled that subtle differences may either raise or lower the probability that the driver of the car from which the odor is emitting has committed a crime:

> If under the totality of the circumstances, a trained and experienced police officer identifies an unmistakable odor of a controlled substance and is able to link that odor to a specific person or persons, the odor of the controlled substance will provide probable cause to arrest.  The strong

8

> odor of marijuana in an automobile will normally provide probable cause to believe that the driver and sole occupant of the vehicle is linked to the drug. The probability diminishes if the odor is not strong or recent, if the source of the odor is not near the person, if there are several people in the vehicle, or if a person offers a reasonable explanation for the odor.

*State v. Secrist*, 224 Wis. 2d 201, 218, 589 N.W.2d 387 (1999). As such, the fact that Salentine did not smell the odor of an intoxicating beverage coming from Quitko himself—but instead inferred from the generalized "slight odor of an intoxicating beverage or intoxicants emitting from the vehicle" that Quitko may have consumed an unknown amount of alcohol—further supports our conclusion that there was not probable cause to request that Quitko submit to a PBT.

¶22 On appeal, the State urges us to adopt the circuit court's rationale that it is "common sense" to conclude that someone who has consumed only a small amount of alcohol is likely to have exceeded the .02 PAC standard. We decline to so do for three reasons. First, to so conclude would ignore that the *Goss* court avoided making such a statement and instead focused on the officer's actual knowledge. Stated differently, the *Goss* court established that the probable cause standard set forth in WIS. STAT. § 343.303 is subjective—not the objective standard that would result from accepting the State's "common sense" test.

¶23 Second, a common sense test would, perhaps, be logical if a driver with multiple OWI-related convictions, such as Quitko, was subject to an absolute sobriety condition. But the legislature has chosen to allow such persons to operate a vehicle with a .02 PAC standard; it has not imposed the absolute sobriety condition that is applicable to commercial drivers. *See Goss*, 338 Wis. 2d 72, ¶12. Notably, the legislature has established that an officer need not have probable cause under WIS. STAT. § 343.303 to request that a commercial driver submit to a

PBT, whereas the statute's probable cause requirement, as defined by *Goss*, still exists for a driver subject to a .02 PAC standard. *Goss*, 338 Wis. 2d 72, ¶12.

¶24 Finally, we disagree with the State that it is "common sense" to conclude that someone who has consumed only a small amount of alcohol is likely to have exceeded the .02 PAC standard. Such a conclusion oversimplifies the relevant factors that must be considered before even a trained individual can estimate a person's BAC, primarily what type of alcohol the person consumed and when and under what circumstances they consumed it. *See, e.g.*, *State v. Vick*, 104 Wis. 2d 678, 683, 312 N.W.2d 489 (1981). Again, Salentine was not aware of any of these factors, as Quitko denied that he had consumed any alcohol prior to the PBT request.

¶25 In sum, this case is controlled by *Goss.* Where, like here, the State relies on the odor of an intoxicating beverage to argue that the probable cause standard set forth by our legislature in WIS. STAT. § 343.303 has been satisfied, it must show that the three *Goss* conditions have been met. Because the State did not do so here, we reverse the judgment of conviction and remand with directions that the circuit court grant Quitko's suppression motion.

*By the Court.*—Judgment reversed and cause remanded.

Not recommended for publication in the official reports.