COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1966-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CM6

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

CATHERINE CUSKEY LARGE,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Green County: JAMES R. BEER, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

¶1 GRAHAM, J.[1] During the course of a traffic stop, Catherine Large was arrested for operating a vehicle while intoxicated ("OWI"), and a sample of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

her blood was later drawn for chemical testing. Large moved to suppress the blood test evidence on the grounds that the traffic stop was unlawfully extended beyond its original mission. After an evidentiary hearing, the circuit court granted Large's motion and then dismissed all counts in the criminal complaint. On appeal, the State argues that the court erred when it suppressed the evidence, and further, that it lacked authority to dismiss the complaint. For the reasons that follow, I affirm the court's suppression order, reverse its dismissal of the complaint, and remand to the circuit court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      An officer stopped Large's vehicle due to malfunctioning rear lights. When the officer approached the vehicle, he noticed an open can of beer in the console. Large admitted to having consumed two beers earlier in the evening and to driving without a valid license.

¶3      The officer returned to his squad car to look up Large's license plate number in a police database. From this search, he learned that Large's license had been revoked as a result of a prior OWI conviction and that she had been ordered not to drive without an ignition interlock device.[2] The officer was aware that Large's vehicle was not equipped with the required device.

¶4      Under Wisconsin law, any individual subject to an ignition interlock device order is also subject to a prohibited alcohol concentration of .02 grams per

---

[2] An ignition interlock device prevents a vehicle from starting if the driver's blood alcohol concentration exceeds a certain level. WIS. STAT. § 340.01(23v). A court may order an individual who has violated certain OWI laws to install one of these devices. WIS. STAT. § 343.301(1g)(a).

100 milliliters of blood, meaning they may not drive if their blood alcohol concentration meets or exceeds that level. WIS. STAT. § 340.01(46m); WIS. STAT. § 346.63(1)(b). This is a significantly lower threshold than the typical prohibited alcohol concentration of .08, which applies to most Wisconsin drivers. *See* § 340.01(46m)(a). The officer was unaware of this law, and as a result, he did not realize that Large's prohibited alcohol concentration was .02, rather than .08.

¶5 Based on the information he had gathered, the officer decided to administer field sobriety testing to determine whether Large was impaired. He administered a horizontal-gaze nystagmus test, which showed no signs of impairment. The officer later testified that, based on his observation, he did not believe that Large was impaired. *See* WIS. STAT. § 346.63(1)(a) (prohibiting any person from driving under the influence of alcohol to a degree which renders them incapable of safely driving). And because he did not know that Large was subject to a .02 restriction, he did not believe that Large was driving with a prohibited alcohol concentration either. *See* § 346.63(1)(b).

¶6 Then, despite his conclusion that Large was not violating any of Wisconsin's OWI laws, the officer proceeded to give her a preliminary breath test (PBT). The PBT registered a blood alcohol concentration of .086.

¶7 It is this decision to administer the PBT that is the focus of Large's suppression motion. According to the officer, it was department "protocol" to "PBT everybody we deal with that's been drinking," without regard to any determination about probable cause. Yet, under Wisconsin law, an officer must have "probable cause to believe that the person is violating or has violated" one of

3

Wisconsin's OWI laws before asking the person to take a PBT. WIS. STAT. § 343.303.[3]

¶8  After he administered the PBT, the officer returned to his squad car, and he finally learned from dispatch that Large's prohibited alcohol concentration was .02. The officer arrested Large and her blood was drawn pursuant to Wisconsin's implied consent law, WIS. STAT. § 343.305(2). The resulting blood test showed Large's blood alcohol concentration to be .042.

¶9  The State charged Large with operating a motor vehicle with a prohibited alcohol concentration, and also with four non-OWI counts:  operating while revoked, failure to install an ignition interlock device, and two counts of bail jumping. Large moved to suppress the blood test evidence on the grounds that the officer unlawfully extended the traffic stop to administer the PBT even though he did not have reasonable suspicion or probable cause to believe that she was violating any OWI law. She argued that the stop should have been completed before the officer developed probable cause for an OWI arrest.

¶10  During the suppression hearing, the State expressly conceded that the PBT was not supported by probable cause.[4] The court determined that the

---

[3] This statute has been interpreted to require "a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop ... but less than the level of proof required to establish probable cause for arrest." *City of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999).

[4] The State appeared to base this concession on the officer's subjective belief that he did not have probable cause of an OWI violation, even though probable cause is assessed based on an objective standard. *See State v. Rose*, 2018 WI App 5, ¶25, 379 Wis. 2d 664, 907 N.W.2d 463. The parties do not address this issue in their briefs and therefore, I express no opinion on the appropriateness of the State's concession. Going forward, I assume without deciding that the administration of the PBT was unsupported by probable cause, contrary to WIS. STAT. § 343.303.

PBT was illegal and would be suppressed,[5] and it ordered briefing on whether the blood test should also be suppressed.

¶11    In the briefs that followed, the parties appeared to agree that the officer had deviated from the original mission of the stop, *see **Rodriguez v. United States***, 575 U.S. 348, 354 (2015), when he administered the PBT.  The disagreements between the parties centered on two primary issues raised by the State:  whether there was a "but-for causal nexus" between any unlawful extension of the stop and the later blood test and whether the officer would have inevitably discovered the blood test evidence through lawful means.[6]  The parties also disagreed about whether suppression of the blood test result would serve the purposes of the exclusionary rule.

¶12    In its oral ruling, the circuit court appeared to agree with Large that the stop had been unlawfully extended, stating that the seizure[7] "was done" once the officer determined that Large was not impaired.  The court also determined that the officer "would not have found out" that Large's blood alcohol

---

[5] It is not clear what would be accomplished by suppressing the PBT result, since such results are not admissible to prove a driver's blood alcohol concentration.  *See* WIS. STAT. § 343.303.

[6] The essence of both of these arguments by the State appears to be that, regardless of the unlawful PBT, the officer would have eventually learned from dispatch that Large was subject to a prohibited alcohol concentration of .02.  According to the State, upon discovery of this information, the officer would have had probable cause to arrest Large because the facts known to him at the time met the low evidentiary threshold required to arrest a driver who is subject to a prohibited alcohol concentration of .02.  *See **State v. Goss***, 2011 WI 104, ¶2, 338 Wis. 2d 72, 806 N.W.2d 918.  Large argued that the State had the burden of proof on this issue, and that it had not introduced evidence necessary to meet its burden of proof.

[7] Although the circuit court used the word "arrest," it appears to have meant "seizure." Neither party asserted that Large was under arrest at the time the officer determined she was not impaired.

concentration "was above .02" without the unlawful PBT. The court appeared to be troubled by the police department's policy of administering PBTs to anyone who had been drinking and driving without regard to the existence of probable cause, and it stated that the exclusionary rule is meant "to prevent such situations." Ultimately, the court suppressed "everything that follows from the PBT ...." Then, without a specific request from either party, the court went on to dismiss all counts in the complaint, including those unrelated to whether Large was driving with a prohibited alcohol concentration.

## DISCUSSION

¶13 There are two issues in this case: whether the circuit court erred by suppressing the blood test evidence and whether it lacked authority to dismiss the complaint. I consider each in turn.

## I. The Suppression Order

¶14 The Fourth Amendment protects against "unreasonable searches and seizures" by the government, U.S. CONST. amend. IV, and a traffic stop is a "seizure" for Fourth Amendment purposes, *Brendlin v. California*, 551 U.S. 249, 255-56 (2007). During a traffic stop, "the tolerable duration of police inquiries … is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "The seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Id.* (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). If police measurably extend the stop beyond the time reasonably required to complete its mission, it then becomes an unconstitutional seizure. *Id.* at 357.

¶15 Under the exclusionary rule, courts suppress evidence gathered during an unconstitutional search or seizure, as well as "derivative" evidence later gathered as a result of the unconstitutional intrusion. *See State v. Carroll*, 2010 WI 8, ¶19, 322 Wis. 2d 299, 778 N.W.2d 1. However, the exclusionary rule is not absolute, and the inevitable discovery doctrine is one exception to the rule. *State v. Jackson*, 2016 WI 56, ¶¶46-47, 369 Wis. 2d 673, 882 N.W.2d 422. Under this doctrine, evidence will not be suppressed if the State shows that it would inevitably have been discovered by lawful means. *See id.*, ¶58.

¶16 In its opening appellate brief, the State argues that the circuit court should not have suppressed the blood test evidence because there was probable cause to conclude that Large's blood alcohol concentration exceeded .02, even without considering the PBT result.[8] The problem with the State's opening brief is that it fails to acknowledge, much less grapple with, the arguments in favor of suppression that Large advanced before the circuit court.

¶17 As noted above, Large argued that the officer measurably extended the duration of the traffic stop when he administered the PBT. At that point, according to Large, the traffic stop became an unconstitutional seizure under *Rodriguez*, and the blood test that resulted from the unconstitutional seizure must be suppressed. During the circuit court proceeding, the State conceded that the administration of the PBT was illegal, and also that it resulted in at least a "minimal break" where the officer was not attending to the mission of the stop.

---

[8] In support of this argument, the State quotes an unpublished per curiam opinion for "persuasive value." With limited exceptions that do not apply here, citation to unpublished per curiam opinions violates our appellate rules. *See* WIS. STAT. RULE 809.23(3)(b).

7

¶18    Yet, the State's opening brief wholly ignores Large's argument that the stop was unlawfully extended. It does not renew the arguments made in the circuit court about but-for causality and inevitable discovery. Nor does it advance any other argument to counter Large's contention that the traffic stop was unlawfully extended. As a general rule, an appellant abandons an issue if it does not raise that issue in its opening brief, and appellate courts are not required to address abandoned arguments. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 493, 588 N.W.2d 285 (Ct. App. 1998).

¶19    In her response, Large points out that the State does not renew arguments it made below. In its reply, the State suggests that it was not required to address whether the traffic stop was unlawfully extended, or the consequences that would result if it was. According to the State, the circuit court's order was based solely on a conclusion that the officer lacked probable cause for the arrest, and so probable cause was the only issue that the State was required to address in its appeal. I disagree for the following three reasons.

¶20    First, I am not convinced that lack of probable cause for the arrest was the sole basis for the court's decision. Notably, the court did not specifically mention probable cause for the arrest in its ruling.[9] But even assuming the State is correct that the court suppressed the blood test evidence based on lack of probable cause, that does not mean that lack of probable cause for the arrest was the *only* basis for the court's order. To the contrary, as discussed above, the court also

---

[9] The State apparently interprets the court's statement that the officer "would not have found out [Large's blood alcohol concentration] was above .02" without the PBT to mean that, without the PBT, he lacked probable cause to arrest Large for OWI.

8

appeared to accept Large's argument that the traffic stop was unlawfully extended. It stated:

> [The officer] made a determination that [Large] was not operating under the influence and terminated [field sobriety tests]. Then he went back, he did his citations and then he decided before he was going to release her, he was going to have her do a PBT.
>
> ….
>
> …. He had already made a determination what was going to be charged and basically the [seizure] was done.

By stating that the seizure was "done," the court implied that it agreed with Large that continuation of the stop after that point was unlawful. Additionally, the court expressly rejected the State's inevitable discovery argument, stating, "I just can't see how you make that reach that you are going to inevitably discover it." Finally, the court unambiguously rejected the State's argument that the exclusionary rule should not apply, stating that the rule "applies here" and is specifically meant "to prevent such situations" as the police department's policy on the administration of PBTs.

¶21    Second, even if the circuit court did not base its ruling on whether the stop was unlawfully extended or whether the inevitable discovery doctrine applies, the State points to nothing in the record to suggest the circuit court ruled in its favor on those issues. The best that could be said for the State is that the court did not squarely address those issues and instead suppressed the evidence on other grounds.

¶22    Most importantly, even if all of the arguments in the State's opening brief are correct and there was probable cause for the arrest, I cannot reverse the circuit court's suppression order based on that issue alone. If the blood draw

evidence was derivative of an unlawful extension of the traffic stop, as Large has maintained throughout this case, then it would be potentially subject to exclusion—*regardless* of whether Large's later arrest was supported by probable cause. *See* **Carroll**, 322 Wis. 2d 299, ¶19; *see also* **Wong Sun v. United States**, 371 U.S. 471, 488 (the exclusionary rule applies to the "fruit" of an unconstitutional intrusion). The State does not explain in its opening brief how I could rule in its favor solely on the ground that there was probable cause for the arrest, nor does it argue that I should decline to apply the exclusionary rule even if there was a Fourth Amendment violation.

¶23 To be sure, in its reply brief on appeal, the State does attempt to renew the issues that it advanced in the circuit court. Specifically, the State asserts that the PBT was not a "but-for" cause of the blood draw, and it argues that the court's inevitable discovery analysis was flawed. However, I generally do not address arguments that are advanced for the first time in a reply brief on grounds of fundamental fairness, because it would "prevent[] the opposing party from having an adequate opportunity to respond." A.O. Smith, 222 Wis. 2d at 492. If the State wished to raise these issues on appeal, it was required to do so in its opening brief.

¶24 In sum, I do not decide whether the blood was drawn during the course of an unconstitutional seizure or whether the exclusionary rule should apply notwithstanding any Fourth Amendment violation because these issues were abandoned by the State. And because a determination of whether the arrest was supported by probable cause would not affect the disposition of this appeal, I decline to decide that issue as well. *See* **Barrows v. American Family Ins. Co.**, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is

dispositive."). Because the State has not raised any meritorious argument that the circuit court erred, I affirm the court's order suppressing the blood test evidence.

## II. Dismissal of the Complaint

¶25    I now turn to the circuit court's dismissal of the entire criminal complaint. After it issued the order suppressing the blood test evidence, it dismissed not only the OWI charge, but also the other non-OWI charges that had no obvious relationship to the PBT or the blood draw. The court cited no authority for this action, stating only that it was dismissing the case because there was "no basis for an arrest." Both parties agree that the court did not have authority to dismiss the complaint.

¶26    Whether a circuit court acted within the scope of its authority is a question of law reviewed de novo. *Breier v. E.C.*, 130 Wis. 2d 376, 381, 387 N.W.2d 72 (1986). Courts do not have the inherent authority to dismiss criminal complaints; instead, "[t]he authority to seek dismissal, with or without prejudice, except in cases of statutory or constitutional authorization, rests in the discretion of the prosecutor." *State v. Clark*, 162 Wis. 2d 406, 410, 469 N.W.2d 871 (Ct. App. 1991). And the statutory authority that courts have in this area is limited. Under WIS. STAT § 968.03, for example, a court may dismiss a complaint without prejudice if the court "does not find probable cause to believe that an offense has been committed or that the accused has committed it ...."

¶27    I conclude that the court lacked authority to dismiss the complaint. It did not make any determination that the counts in the complaint were unsupported by probable cause, and at least with regard to the non-OWI charges, it is not clear how any such determination could be made. Accordingly, I conclude the circuit court erred by dismissing the complaint.

11

## CONCLUSION

¶28 For all these reasons, I affirm the circuit court's suppression order, reverse the court's dismissal of the complaint, and remand for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.