COURT OF APPEALS
DECISION
DATED AND FILED

January 31, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1199-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF407

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

MARTY A. NICHOLS,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Barron County: ANGELINE E. WINTON, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   The State of Wisconsin appeals from a circuit court order granting Marty A. Nichols' motion to suppress evidence.   Because we conclude that the arresting officer had reasonable suspicion to extend Nichols' lawful traffic stop to investigate whether Nichols was operating a motor vehicle with a prohibited alcohol concentration (PAC) and also had probable cause to request a preliminary breath test (PBT), we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2     The following undisputed facts are taken from the evidence presented at the suppression hearing.   On December 14, 2019, at 1:45 a.m., Village of Cameron Police Sergeant Adam Steffen conducted a random registration check on a passing vehicle, which revealed that the registered owner—Nichols—had a revoked operating privilege and an occupational license.   Steffen also knew that 1:45 a.m. was outside the hours of operation permitted by the occupational license.   Steffen attempted to catch up to the vehicle to conduct a traffic stop, but the vehicle was no longer visible to him.

¶3     Steffen then contacted City of Barron Police Sergeant Adam Schofield, provided him with the same information, and told him the vehicle was "traveling towards his jurisdiction" and that he could "watch out for it."   Schofield subsequently located the vehicle, confirmed the license plate, and executed a traffic stop on the vehicle in an alley.   Schofield identified the driver as Nichols, who confirmed that his license was revoked and that he was driving outside the restrictions of his occupational license.   At that time, Schofield did not observe any indicia of intoxication, and he did not ask Nichols if he had been drinking.

¶4      Schofield returned to his squad car and contacted dispatch, confirmed the information pertaining to Nichols' revoked license, and learned that Nichols was also on probation and was subject to a blood alcohol concentration (BAC) limit of .02. Schofield testified that "while [he] was … typing up the citation for operating after revocation [(OAR)], [he] had requested dispatch contact probation to see if they wanted to place a hold" on Nichols. In response, dispatch reported that probation "asked about a PBT," but Schofield explained that they did not "specifically say they wanted a PBT." As a result of probation's question, Schofield "made [an] assumption" that Nichols "was on a condition not to consume [any] alcohol in relation to his probation status." Schofield then directed another officer on the scene, Andres Meza, to ask Nichols if he had been drinking and to administer a PBT, but he "advised [Meza] that if the PBT started to read, to turn it off immediately."

¶5      Meza did as he was instructed. Nichols admitted he had consumed "a drink or two before 9 PM" and agreed to take a PBT. When Meza saw the PBT start to rise, indicating a BAC above 0.00, he stopped the PBT before obtaining a result, as Schofield had directed. Meza did not observe any signs of intoxication. Meza reported his findings to Schofield, who returned to Nichols' vehicle and also asked Nichols whether he had been drinking. This time, Nichols responded that he had "two or three beers, and stopped drinking around 9 or 10 PM." Schofield testified that he knew "it doesn't take very much to reach a .02."[1] He then asked Nichols to perform field sobriety tests, and while Schofield "observed two clues

---

[1] Schofield testified that he had worked in law enforcement for about twenty-four years and had been involved in "probably at least a couple hundred, a few hundred" operating while intoxicated investigations during that time. Schofield explained that his knowledge that "it doesn't take very much to reach a .02" was based on his "[t]raining and experience."

3

on the [horizontal gaze nystagmus] test," he testified that Nichols "passed all three tests." Schofield did not detect an odor of alcohol on Nichols.

¶6 Due to Nichols' .02 BAC restriction and his admission to drinking, Schofield asked him to take another PBT, which registered a .059 BAC. Nichols was arrested, and the State charged him with operating a motor vehicle with a PAC, as a fifth offense, and OAR. A blood test taken after Nichols' arrest revealed a .055 BAC.

¶7 Nichols filed a motion to suppress the blood test results on the ground that law enforcement lacked the requisite probable cause to request a PBT. The circuit court held a suppression hearing during which Schofield, Steffen, and Meza testified. After the hearing, the court granted Nichols' motion, concluding that law enforcement did not have sufficient probable cause to request the second PBT.

¶8 In reaching this conclusion, the circuit court cited our supreme court's decision in *State v. Goss*, 2011 WI 104, 338 Wis. 2d 72, 806 N.W.2d 918. There, the supreme court held that there was probable cause for an officer to request a PBT from a driver where: (1) the officer knew the driver was subject to a .02 PAC standard; (2) the officer knew that it would take little alcohol consumption for the driver to exceed that limit; and (3) the officer smelled alcohol on the driver. *Id.*, ¶2. While acknowledging that the first two factors under *Goss* had been satisfied, the circuit court refused to "extend" the *Goss* court's reasoning

to include an admission of drinking alcohol rather than an odor of alcohol.[2] According to the court, the odor of alcohol gives law enforcement "some indication of the immediacy of consumption," while an admission to drinking does not. The State appeals. *See* WIS. STAT. § 974.05(1)(d)2. (2019-20).[3]

## DISCUSSION

¶9     The parties present three issues on appeal: (1) whether law enforcement impermissibly extended Nichols' OAR traffic stop and converted it into a PAC investigation; (2) whether there was probable cause to request the first PBT; and (3) whether there was probable cause to request the second PBT.

¶10     First, Nichols asks us to affirm the circuit court's grant of his suppression motion on a ground not considered by the court: law enforcement did not have reasonable suspicion to extend the traffic stop.[4] He argues that his blood test results were properly suppressed because law enforcement unlawfully extended the traffic stop when Schofield told Meza to obtain a PBT from Nichols. A routine traffic stop's "tolerable duration … is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop … and attend to

---

[2] The circuit court granted Nichols' motion to suppress by an oral ruling. The State then requested clarification regarding whether the court had found that the State failed to establish both factors two and three under *State v. Goss*, 2011 WI 104, 338 Wis. 2d 72, 806 N.W.2d 918. The court held a hearing and issued another oral ruling, reaching the same result and concluding that only *Goss*'s third factor had not been satisfied.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[4] While the circuit court did not address this question because it granted suppression based on a lack of probable cause to conduct the second PBT, Nichols did argue that the traffic stop was unlawfully extended in his motion to suppress. Nichols does not challenge his initial traffic stop for OAR.

related safety concerns." ***Rodriguez v. United States***, 575 U.S. 348, 354 (2015) (citations omitted). "A stop's length becomes unreasonable if extended past the point 'when tasks tied to the traffic infraction are—or reasonably should have been—completed.'" ***State v. Brown***, 2020 WI 63, ¶10, 392 Wis. 2d 454, 945 N.W.2d 584 (quoting ***State v. Floyd***, 2017 WI 78, ¶21, 377 Wis. 2d 394, 898 N.W.2d 560). A "stop's permissible duration includes drafting and explaining tickets to a driver." ***Id.***, ¶32 (citing ***Floyd***, 377 Wis. 2d 394, ¶23).

¶11 A traffic stop may be extended and a new investigation begun, however, if "the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place." ***State v. Betow***, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999); ***State v. Hogan***, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124 ("An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion."). Whether reasonable suspicion exists depends on the totality of the circumstances. ***Hogan***, 364 Wis. 2d 167, ¶36.

¶12 Here, we conclude that the traffic stop was not impermissibly extended because the mission of the traffic stop was not completed at the time of the first PBT request.[5] Schofield testified that he asked Meza to speak with Nichols and request a PBT *while* he was writing Nichols' ticket for OAR. Thus, at

---

[5] In certain instances, law enforcement may lawfully extend the stop as a result of the defendant's probation status. *See* 2013 Wis. Act 79. Neither the State nor Nichols argues that Act 79 is applicable under the circumstances of this case; therefore, we will not address it further.

the time Meza spoke with Nichols, Schofield had not completed the ticket for OAR, he had not returned to Nichols' vehicle, he had not given him the ticket, and he had not explained the ticket to him. There is also no evidence in the record that Schofield "unnecessarily delay[ed] the process." *See Floyd*, 377 Wis. 2d 394, ¶23. The traffic stop was therefore ongoing. *See Brown*, 392 Wis. 2d 454, ¶32; *Floyd*, 377 Wis. 2d 394, ¶23. And, for the reasons we explain below, once Meza spoke with Nichols and Nichols admitted to drinking alcohol, there was probable cause to believe—and therefore reasonable suspicion—that Nichols had been driving with a BAC above .02. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) ("'[P]robable cause to believe' refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop …."). Thereafter, law enforcement properly extended the stop to begin a new investigation.

¶13 Nichols, however, cites *State v. Adell*, 2021 WI App 72, 399 Wis. 2d 399, 966 N.W.2d 115, in support of his position that law enforcement lacked reasonable suspicion to convert the OAR investigation into a PAC investigation. In *Adell*, this court reversed the circuit court's order granting suppression and held that there was reasonable suspicion under the totality of the circumstances that Adell had committed a PAC offense. *Id.*, ¶¶12, 26. Nichols claims that "*Adell* illustrates that only minimal facts are necessary to support reasonable suspicion when the crime under investigation is a .02 PAC investigation" but that "[e]ven this very low bar outlined in *Adell* … is not met in the instant case."

¶14 We are not persuaded that any factual distinctions between this case and *Adell* dictate a different result in this case. *Adell* and this case have many similarities: (1) both cases included testimony pertaining to law enforcement's training and experience with operating a motor vehicle while intoxicated (OWI)

7

investigations; (2) both defendants were subject to a .02 restriction, and the officers knew that very little alcohol consumption was needed to reach a .02 BAC; (3) both defendants had prior OWI convictions; (4) both cases included an extension of a lawful traffic stop for a traffic infraction—Adell's was a moving violation while Nichols' was not; (5) both defendants admitted to consuming alcohol at some point prior to the stop; and (6) neither officer noted indicia of intoxication. *See id.*, ¶¶5-9, 19-26. The one significant distinction between this case and *Adell* is that the officer in *Adell* smelled intoxicants coming from the vehicle. *Id.*, ¶6. Nichols argues that "[t]he odor of alcohol gave the officer in *Adell* a basis to inquire about drinking and provided the link between the factors that individually did not carry a lot of weight." As the State argues, however, "*Adell* did not set the floor for reasonable suspicion." Further, nothing in the *Adell* decision suggests that under the totality of the circumstances, reasonable suspicion is lacking without the odor of intoxicants.

¶15     We next address whether Meza was authorized to request the first PBT from Nichols. Law enforcement is authorized to request a PBT when there is "probable cause to believe that the person is violating or has violated" WIS. STAT. § 346.63(1). WIS. STAT. § 343.303. Officers, however, are not required to have probable cause to arrest a driver for OWI before requesting a PBT, *see State v. Felton*, 2012 WI App 114, ¶8, 344 Wis. 2d 483, 824 N.W.2d 871; instead, "[a]n officer may request a PBT to help determine whether there is probable cause to arrest a driver suspected of OWI," *Renz*, 231 Wis. 2d at 316. The phrase "probable cause to believe" in § 343.303 "refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop … but less than the level of proof required to establish probable cause for arrest." *Felton*, 344 Wis. 2d 483, ¶8 (quoting *Renz*, 231 Wis. 2d at 316). "[P]robable cause is a

determination made 'looking at the totality of the circumstances' and is a 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior.'" *Goss*, 338 Wis. 2d 72, ¶25 (citation omitted). Whether law enforcement had probable cause to request a PBT is a legal issue that we decide de novo, accepting the circuit court's findings of fact unless they are clearly erroneous. *See Renz*, 231 Wis. 2d at 316.

¶16 In this case, Nichols argues that there was no probable cause to request the first PBT because Schofield had no suspicion that Nichols was committing an OWI-related offense and Meza only requested the PBT based on Schofield's instructions. As a result, Nichols argues that under *Goss*, "all evidence obtained after this point must be suppressed." *See Goss*, 338 Wis. 2d 72, ¶5 n.6. We disagree.

¶17 Initially, we note that the State, as it did before the circuit court, seeks to expand the rule in *Goss* to include circumstances where a suspect admits to consuming alcohol but there is no odor of alcohol present. *See id.*, ¶2. As noted, neither of the officers observed an odor of alcohol at any point during Nichols' traffic stop. Accordingly, this is not a *Goss* case.[6] Further, we, like the

---

[6] Nichols also argues that our holding in *State v. Quitko*, No. 2019AP200-CR, unpublished slip op. ¶20 (WI App May 12, 2020), underscores "[t]he importance of the presence of an odor of intoxicant and what it means in the context of an analysis of the propriety of a request for a PBT." *Quitko*, however, is easily distinguished on its facts. There, this court determined that the case was controlled by *Goss* and that where "the State relies on the odor of an intoxicating beverage to argue that the probable cause standard … has been satisfied, it must show that the three *Goss* conditions have been met." *Quitko*, No. 2019AP200-CR, ¶25. Again, Nichols' case did not involve an odor of intoxicants; thus, this is not a *Goss* case. *See Quitko*, No. 2019AP200-CR, ¶20. Further, the deputy in *Quitko* did not testify regarding his knowledge or experience as to how much alcohol an individual may consume before exceeding a .02 PAC standard. *Id.*, ¶19. And finally, Quitko did not admit to drinking any alcohol prior to the PBT request. *Id.*, ¶24.

(continued)

circuit court, decline any invitation to expand our supreme court's holding in *Goss* to have circumstances where a suspect admits to recently consuming alcohol fill the role that an odor of alcohol serves under the third factor of the *Goss* test. Our directive is to decide cases on the narrowest possible grounds, *see State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997), and previous case law eschews bright-line rules in OWI investigations, *see Missouri v. McNeely*, 569 U.S. 141, 158 (2013); *see also State v. Sumner*, 2008 WI 94, ¶20, 312 Wis. 2d 292, 752 N.W.2d 783 ("The Fourth Amendment's touchstone is reasonableness, which is measured in objective terms by examining the totality of the circumstances, eschewing bright-line rules and emphasizing instead the fact-specific nature of the reasonableness inquiry.").

¶18    Nevertheless, we conclude that under the totality of the circumstances in this particular case, probable cause existed to request the first PBT from Nichols. First, officers were aware that Nichols' operating privilege had been revoked. *See Goss*, 338 Wis. 2d 72, ¶¶6, 18. Second, officers knew that Nichols was on probation, and given probation's inquiry about a PBT, it was reasonable to assume that Nichols may have been subject to a no-alcohol condition of probation. In fact, the record reflects that there was an absolute sobriety condition on Nichols' occupational license. Third, Nichols was driving outside the hours he was legally permitted to drive under his occupational license. *Cf. Town of Freedom v. Fellinger*, No. 2013AP614, unpublished slip op. ¶24 (WI App Aug. 6, 2013) (observing that speeding is a factor contributing to

---

Unpublished opinions authored by a three-judge panel and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

reasonable suspicion of OWI as it "showed [the defendant's] nonconformance with the law").

¶19 Fourth, officers were aware that Nichols was subject to a .02 limit, meaning that he had prior OWI-related offenses. *See* WIS. STAT. § 340.01(46m)(c); *Felton*, 344 Wis. 2d 483, ¶9; *State v. Lange*, 2009 WI 49, ¶33, 317 Wis. 2d 383, 766 N.W.2d 551. Fifth, Nichols told Meza that he had "a drink or two" before 9:00 p.m. While "[n]ot every person who has consumed alcoholic beverages is 'under the influence,'" *see* WIS JI—CRIMINAL 2663 (2020), Schofield testified that he knew that it takes very little alcohol to exceed the .02 limit,[7] *see State v. Blatterman*, 2015 WI 46, ¶63, 362 Wis. 2d 138, 864 N.W.2d 26 (Ziegler, J., concurring) ("The legislature essentially imposed an absolute sobriety standard by adopting the .02% limit for serial OWI offenders while they are operating a motor vehicle."). Further, the officers were not required to take at face value the amount of alcoholic beverages Nichols claimed to have consumed. *See State v. Colstad*, 2003 WI App 25, ¶¶14, 21, 260 Wis. 2d 406, 659 N.W.2d 394. Here, Nichols admitted to drinking one or two alcoholic beverages only a few hours earlier, and it is reasonable to assume that given the alcohol restrictions on Nichols' occupational license, Nichols would minimize his actual consumption of alcohol when he spoke to law enforcement.

¶20 Sixth, and finally, Nichols was stopped a little after 1:45 a.m., which, as the circuit court noted, was "around bar closing time." *See, e.g.*, *Lange*, 317 Wis. 2d 383, ¶32; *State v. Post*, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d

---

[7] While Meza testified that he asked Nichols for a PBT because Schofield told him to do so, probable cause is an objective standard. *See State v. Lange*, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551.

11

634. Law enforcement was aware of all the above information and appropriately concluded that the information, which was properly considered under the law, was sufficient to satisfy the lower standard of probable cause to believe that Nichols may have a BAC above .02 and to request a PBT to determine whether to arrest him. *See State v Begicevic*, 2004 WI App 57, ¶10, 270 Wis. 2d 675, 678 N.W. 293 (observing that a PBT is meant to assist law enforcement in determining whether there is probable cause to arrest).

¶21 Given our conclusion that law enforcement had probable cause to request the first PBT from Nichols, we also conclude that Schofield had probable cause to request the second PBT. Here, in addition to the above facts, which are relevant to our analysis of whether Schofield had probable cause to request the second PBT, Schofield was also aware that the first PBT, performed by Meza, started to rise, indicating a BAC above 0.00.[8] Additionally, Nichols reported to

---

[8] Nichols asserts that "Schofield's peculiar command to immediately shut off the breathalyzer machine if it 'started to read' illustrates that the sergeant was aware that he did not have authority to request a breath test" and that "[t]his request is so irregular, no case—published or unpublished—deals with" this particular situation. Nichols' arguments on this point, however, are undeveloped and unsupported by legal authority, and we will not address them further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

Nichols also notes that

> [t]he state avers that it does not "rely on the first PBT seeming to show a result above .00 as a basis for probable cause for the second PBT," but Sergeant Schofield testified that his decision to begin the criminal PAC violation investigation was, in fact, based on the climbing reading of the first PBT.

As noted previously, probable cause is an objective standard; thus, we look to a reasonable officer's analysis based on the record, not only to what Schofield stated he considered. *See Lange*, 317 Wis. 2d 383, ¶20. Further, given our conclusion that the first PBT was supported by probable cause, it was not unreasonable for Schofield to consider the first PBT in his decision to conduct the second PBT.

Schofield that he drank a greater number of beers—two or three beers rather than one or two—and stopped drinking more recently—10:00 p.m. versus 9:00 p.m.

¶22 For these reasons, we conclude that the circuit court erred by granting Nichols' suppression motion. We reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.